USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK UNIVERSITY,

Plaintiff,

-against-

GALDERMA LABORATORIES, INC.,

Defendant.

**ORDER AND OPINION GRANTING MOTION BY NYU FOR PARTIAL SUMMARY JUDGMENT AND PROVIDING FOR PARTIAL FINAL JUDGMENT**

12 Civ. 8169 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff New York University ("NYU") sues Defendant Galderma Laboratories, Inc. ("Galderma") for breach of a Research, License, and Option Agreement ("Agreement"), executed on December 28, 1999 by their respective predecessors in interest. On October 31, 2013, resolving NYU's motion for summary judgment, I held that Galderma, as licensee of patents assigned to and owned by NYU, had to pay royalties to NYU under the Agreement for sales of Licensed Products, and that the drug Oracea was such a Licensed Product. I entered partial judgment against Galderma in the amount of $1,544,273.59 plus interest until paid of 7.282% (the contract rate, two percent over the prime rate). The judgment reflected unpaid royalties through November 20, 2013 in the amount of $1,365,545.18, and attorneys' fees authorized by their agreement through October 31, 2013 in the amount of $178,728.41. (Doc. No. 123, Dec. 3, 2013). I deferred execution until final judgment. The judgment remains unpaid.

On June 2, 2015, NYU moved for partial summary judgment to update its damage recoveries against Galderma through December 31, 2014, and to compel production of Galderma's royalty reports for sales of Oracea between November 27, 2013 and December 31, 2014. NYU's motion asked also for a finding that Galderma repudiated the contract, and for a

finding of anticipatory breach. For the reasons stated below, NYU is entitled to judgment for accrued money damages, and an entry of partial final judgment pursuant to Fed. R. Civ. P. 54(b).

**ROYALTY REPORTS FOR SALES OF ORACEA**

The Research, License, and Option Agreement (the "Agreement") to which NYU and Galderma have become parties grants Galdmera an exclusive worldwide license to use and practice certain NYU patents "for the development, improvement, marketing, manufacture, use and sale of Licensed Products." (Agreement at §1(g).) A "Licensed Product" under the Agreement is any product within the field covered by a claim of any unexpired NYU patents which have not been disclaimed "or held invalid by a court of competent jurisdiction from which no appeal can be taken." (Agreement at §1(h).)

At issue are the "Amin Patents," two patents licensed to Galderma by NYU pursuant to the Agreement. (Dkt. No. 1 at ¶24.) Appendix I of the Agreement, which lists patent applications that were pending at the time of the Agreement's execution and which were to be licensed pursuant to the Agreement, includes: "Method of Using Tetracycline Compounds for Inhibition of Nitric Oxide Production." (Agreement at §1(e), App'x 1.) The resulting Amin Patents concern two methods of inhibiting nitric oxide production using tetracycline compounds. (U.S. Patent No. 5,789,395; U.S. Patent No. 5,919,775.) The Amin Patents support Galderma's brand drug, Oracea, which is approved by the FDA for the treatment of inflammatory lesions of rosacea in adults. (*Id.* at ¶25.)

Pursuant to the Agreement, Galderma is obligated to pay royalties to NYU with respect to each Licensed Product. (*See* Agreement at §7.) Under the Agreement, the year is divided into two periods, ending on June 30 and December 31, and Galderma is obligated to "submit to [NYU] a full and detailed report of royalties . . . due" to NYU "not later than ninety

(90) days after" the end of each period. (Agreement at §7(b).) Payment for each half-year period is to accompany each royalty report. (*Id.*)

Thus, Galderma owed royalty reports for sales of Oracea 90 days after December 31, 2013, June 30, 2014, and December 31, 2014; or on March 31, 2014, September 28, 2014, and March 31, 2015, respectively. Galderma has not complied, with either the reports or the amounts due as stated by the reports. Galderma's failures constitute breaches of the Agreement.

Galderma shall cure its default within 30 days of the issuance of this order. If Galderma fails to produce the reports for the periods ended December 31, 2013, June 30, 2014, and December 31, 2014, providing the information according to the requirements provided by Section 7 of the Agreement, NYU may move for appropriate relief, including appropriate sanctions which may include the appointment of a receiver authorized and empowered to perform the inspection of Galderma's books, records, and documentation as provided by Section 7 of the Agreement.

The Agreement also requires Galderma to remit royalties due at each reporting period, to accompany each royalty report. (Agreement at §7(b).) As I held, "royalties are due from May 16, 2012 until either the License Agreement expires or a time comes, if ever, that there is a holding that the Amin patents held by NYU are invalid from which no appeal could be taken." (Dkt. No. 120 at 1; Agreement at §1(h).) Galderma has not complied with this requirement. Galderma's failures constitute breaches of the Agreement.

Galderma explains its failure to provide royalty reports, and to remit royalties due according to such reports, by the same arguments as those held invalid in my orders of April 17, 2013, and October 31, 2013. I hold them invalid again, and for the same reasons.

On April 17, 2013, I granted NYU's motion for partial summary judgment as to Galderma's liability on Count I, holding that Oracea is a "Licensed Product within the unambiguous definition provided by" the Agreement. (*See* Dkt. No. 44.) In the April, 2013 Order, I further held that the extent of royalties to be paid was a question of fact. (*Id.*) On October 31, 2013, I again rejected Galderma's repetition of its contentions and held that unpaid royalties through November 20, 2013 amounted to $1,365,545.16, and that interest was to run at the contract rate of 7.282 percent. (Dkt. No. 120; Dkt. No. 123.)

**ATTORNEYS' FEES**

NYU seeks to recover the attorneys' fees it incurred after my October 31, 2013 Order in connection with the Amin patent's litigation in the United States District court for the District of Delaware and in the U.S. Court of Appeals for the Federal Circuit. Galderma does not dispute the amount incurred by NYU ($8,438.50), additional to the prior unpaid judgment of $178,728.41.

In March 2009, Galderma filed suit against Mylan Pharmaceuticals in the District of Delaware, alleging that Mylan infringed on the Amin Patents in producing a generic form of Oracea. (Dkt. No. 1 at ¶¶27-32.) Pursuant to the Agreement, Galderma sought and received NYU's permission to add NYU as a plaintiff in the action (the "Mylan Case"). (*Id.* at ¶¶28, 30; *see* Agreement at §13(b).) NYU also joined Galderma in two other suits against Lupin and Impax, two manufacturers and sellers of generic versions of Oracea (the "Lupin Case" and the "Impax Case"). (Dkt. No. 1 at ¶33.)

On August 26, 2011, the Delaware District Court held in part that the patents held by NYU were invalid (the "Mylan Decision"). *Research Found. of State Univ. of N.Y. v. Mylan Pharm., Inc.*, 809 F. Supp. 2d 296 (D. Del. 2011). The parties (NYU, Galderma, and the

respective defendants), by stipulation, entered similar judgments in the Lupin and Impax Cases. Galderma informed NYU that it would not pay the attorney's fees associated with an appeal of the Mylan Decision. (*Id.* at ¶41.) On July 20, 2012, NYU filed notice of appeal in the Mylan case, and, on August 3, 2012, from the stipulated judgements in the Lupin and Impax cases. (*Id.* at ¶¶49-50.) The Mylan, Lupin, and Impax cases were consolidated (the "Appeal"). *See The Research Found. of State Univ. of N.Y. v. Mylan Pharm., Inc.*, 531 Fed. App'x 1008 (Fed. Cir. 2013).

On August 7, 2013, the U.S. Court of Appeals for the Federal Circuit affirmed the rulings of the district court "except with regard to three dependent claims of the Amin Patents." *Id.* As to these three claims of the Amin Patents[1], the Court of Appeals vacated the decision of the district court that held the patents invalid, and remanded the case. As a result, the Amin Patents remained valid, continuing to support the production and marketing of Oracea by Galderma.

Following remand, the parties to the district court lawsuits settled, and stipulated to the dismissal of all defenses and counter claims for invalidity, and the court ordered dismissal of the case without prejudice. *The Research Foundation of State University of New York et al. v. Mylan Pharm., Inc.*, No. 1:09-cv-00184-LPS (D. Del. Dkt. Nos. 337, 338). The stipulation provided that the generic defendants – Mylan, Lupin, and Impax – thereby withdrew their allegations that the three claims of the Amin Patents were invalid. The Amin Patents thus remain valid.

As previously, Galderma refuses to pay royalties to NYU even though none of the Amin Patents licensed in the Agreement were "disclaimed," or "held invalid by a court of competent jurisdiction from which no appeal can be taken." (Agreement at §1(h).) Galderma also

---

[1] Two dependent claims of U.S. Patent No. 5,789,395 and one dependent claim of U.S. Patent No. 5,919,775.

refuses to pay NYU's attorneys' fees, arguing, as it did previously, that "appeals" are not included in "suits." (Agreement at §13(b).) I held, on October 31, 2014, that NYU was entitled to reimbursement of its fees, and that it was Galderma's duty to "take all steps . . . necessary to give full effect" to NYU's "right, title, and interest" in the Amin Patents. (Agreement at §10(b).) Summary judgment is granted in favor of NYU in the amount of $8,438.50, supplementing the prior judgment of $178,728.41, plus interest as previously specified.

**MAINTENANCE FEES AND EXPENSES**

NYU also seeks to recover maintenance fees and expenses of $38,176.61 incurred in connection with the maintenance of the patents it licensed to Galderma. Section 12(b) of the Agreement requires Galderma to "reimburse [NYU] for the actual costs and fees . . . incurred by [NYU] . . . in connection with the preparation, filing, maintenance, prosecution, protection and the like of the [Amin] Patents." (Doc. No. 13, Ex. 1). Paragraph 15 of NYU's complaint pleads section 12 of the Agreement, including Galderma's obligation to reimburse NYU for "the actual costs and fees . . . incurred by [NYU] during the term of" the Agreement. Dkt. No. 1 at ¶15.

Galderma does not dispute the amount due. Galderma argues that NYU waived the claim by failing to include it in its Complaint and in its July 2013 summary judgment motion. But paragraph 15 of the Complaint alleges such costs, pursuant to paragraph 12(b) of the contract, sufficient to give Galderma notice. NYU explains that nothing was due when it pled its Complaint and when it moved for summary judgment. But, NYU alleges, money is now due, and it is entitled to be reimbursed.

NYU's claim has fairly been alleged, and money is admittedly due to it. The Court has the power to grant parties leave to amend their pleadings to conform to the proofs presented during the litigation. *See* Fed. R. Civ. P. 15(b); *Browning Debenture Holders' Comm.*

*v. DASA Corp.*, 560 F.2d 1078, 1085-86 (2d Cir. 1977). Galderma has not shown that any prejudice will result from such an amendment. NYU is granted leave within seven days to supplement its Complaint and make specific claims to reimbursement, thus conforming the pleadings to the proof. Summary judgment is granted in favor of NYU in the amount of $38,176.61.

**ANTICIPATORY BREACH, REPUDIATION, AND FINALITY OF JUDGMENT**

NYU also claims that Galderma's refusal to issue royalty reports and pay royalties is a repudiation of its obligations, making it liable for anticipatory breach. However, Galderma's persistence in asserting its interpretation of the license agreement is not a repudiation. Galderma could, if it wished, "terminate and revert its license and all right to make, use or sell . . . any Licensed Product at any time upon sixty days prior written notice." (Agreement §14(d).) Galderma has not done so. Galderma wishes to continue selling Oracea, but also wishes to persist in its assertion that Oracea is not covered by the Amin patents and is not a Licensed Product under the Agreement; therefore, Galderma asserts, it can both sell Oracea, and not pay royalties for selling Oracea. Conversely, NYU is also in position to terminate the exclusive, world-wide license it granted under the Agreement to Galderma, because Galderma's "failure to pay any amounts due [under the Agreement]," and failure to cure within thirty days after written notice, gives NYU rights to "terminate this Agreement for cause." (Agreement at §14(b).)

Neither party wishes to enforce its termination rights. Both wish to continue under the License Agreement. However, Galderma refuses to pay damages until final judgment is entered and it can appeal.

The remedies of repudiation and anticipatory breach that NYU proposes are inconsistent with Section 14 of the Agreement, and are unworkable. Damages cannot be

accelerated, as for an installment contract or promissory note, because there is no contract provision authorizing such, and because future royalties cannot be calculated with any degree of confidence. NYU does not wish to terminate Galderma as licensee in order to license another, and Galderma does not wish to terminate its status as licensee. Both parties are anxious to appeal my contract interpretations in order to settle the issue, but cannot do so unless there is finality. My prior judgment of October 2013 does not provide for finality.

Federal policy normally cautions against "piecemeal appeals." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). "Thus, in the federal district courts, the entry of a final judgment is generally appropriate 'only after all claims have been adjudicated.'" *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (quoting *Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 629 (2d Cir. 1991)). Rule 54(b) provides one exception. It provides that

> [w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). As the Supreme Court explained,

> In deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved. . . . It [i]s therefore proper . . . to consider such factors as whether the claims under review [a]re separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there [are] subsequent appeals.

*Curtiss-Wright*, 446 U.S. at 8. A "court generally should not grant a Rule 54(b) certification 'if the same or closely related issues remain to be litigated.'" *Novick*, 642 F.3d at 311 (quoting *Harriscom*, 947 F.2d at 629). It is better suited to resolution of claims with "an important or

controlling legal issue that cuts across (and cuts out or at least curtails) a number of claims." *U.S. Fidelity and Guar. Co. v. Lee Investments, LLC*, 641 F.3d 1126 (9th Cir. 2011).

In October 2013, I ruled that a Rule 54(b) certification was not appropriate. However, the continuing contentions of the parties convince me that there is no just reason to delay final judgment here. Factors to consider in deciding whether there is no just reason for delay include:

> (1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by further developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expenses and the like.

*Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir. 1994); *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975); *MCI Contractors, LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010); *see also Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011). Each factor weighs in favor of entering partial judgment in this case.

First, the merits of the contract dispute were already fully aired in 2013 and were resolved. I now have had to resolve the very same issue again, with identical results. There is no good reason why the parties and the Court should have to participate in this same exercise at every royalty period. Once the Court of Appeals definitively interprets Galderma's obligations to NYU under the Agreement, future motions will require me to resolve only the amounts of royalty payments that accrue in the future. Indeed, the parties have shown that they can work together and agree to the requisite royalty figure, meaning resolution of the substantive issues should obviate the need for any future proceedings in this Court.

Second, there is no risk that the need for review will be mooted by further developments in the district court. The only expected future developments are renewed motions by NYU to update the amount of its judgment based on future sales of Oracea. These motions are unrelated to the substantive issues of the contract.

Third, there is no risk that the Court of Appeals would have to interpret the same contractual provisions again. *See Curtiss-Wright*, 446 U.S. at 8.

Fourth, there are no counterclaims that will potentially offset part of the damages award.

Finally, practical and equitable considerations weigh in favor of entry of partial judgment. NYU has judgment in its favor but is unable to collect. Galderma believes it will ultimately be vindicated on appeal, but in the meantime a 7.8% contractual interest rate compounds its liability in the event it loses. And the Court faces the prospect of renewed motions for partial summary judgment to update the amount of damages every six months until the patent expires or is found invalid. That is not a good use of time.

The parties shall appear on September 11, 2015, at 10:00 AM, to discuss compliance with the rulings in this Order and Opinion and to stipulate to the amount of damages accrued through December 31, 2014. At that time, partial final judgment will be entered in the stipulated amount pursuant to Fed. R. Civ. P. 54(b), subject to execution. If there is a dispute as to the amounts (or any other issue), the parties shall submit a joint letter describing the dispute by September 9, 2015.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of NYU in the amounts of $8,438.50 for attorneys' fees and $38,176.61 for maintenance fees and expenses through December 31, 2014.

NYU shall supplement its Complaint within 7 days to specifically add a claim for maintenance fees and expenses. The allegations will be deemed denied by Galderma with no further answer required. Within 30 days, Galderma shall produce all royalty reports required by the license agreement for the periods ended December 31, 2013, June 30, 2014, and December 31, 2014 and, at the same time, remit the amount of royalties due for each such period.

On September 11, 2015, the parties shall meet with me and make submissions for an entry of partial final judgment, subject to execution, pursuant to Fed. R. Civ. P. 54(b).

The Clerk shall mark NYU's motion (Doc. No. 129) terminated.

SO ORDERED.

Dated: July 31, 2015
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge